IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MARK A. WARD,                      )
                                   )
     Plaintiff,                    )
                                   )
     v.                            )     1:05CV00424
                                   )
PETER E. MALONEY,                  )
Plan Administrator, LIN            )
Television Corporation,            )
     Defendant.                    )
```

MEMORANDUM OPINION

OSTEEN, District Judge

Pro se Plaintiff Mark A. Ward brings this action against Defendant Peter E. Maloney, the plan administrator of the LIN Broadcasting Corporation Retirement Plan, a retirement plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiff, a Plan participant, claims Defendant failed to comply with Plaintiff's request for a summary of material modifications pursuant to 29 U.S.C. § 1024(b)(4) and seeks a statutory penalty under 29 U.S.C. § 1132(c)(1). This matter is now before the court on the parties' cross motions for summary judgment. For the reasons set forth herein, Plaintiff's motion for summary judgment will be denied; Defendant's motion for summary judgment will be granted.

**I.  BACKGROUND**

The following facts are undisputed by the parties.[1]

Plaintiff Ward is a former employee of WAVY-TV, an affiliate of LIN Broadcasting Corporation ("LIN Broadcasting").  Plaintiff separated from WAVY-TV in 1993, but remains a participant in the LIN Broadcasting Corporation Retirement Plan (the "Plan"), of which Defendant is plan administrator.

Subsequent to his separation from WAVY-TV, Plaintiff made an inquiry to LIN Broadcasting about his work-related benefits.  In response, Plaintiff received a letter from Lynn Langelier, an executive assistant with LIN Broadcasting, dated September 5, 2001 ("Langelier Letter").  Therein, Ms. Langelier, after summarizing Plaintiff's potential benefits, wrote as to the Plan's disability benefits, "For your information, the committee is considering an amendment to the plan that would limit disabilities to employees actively working for the company at the

---

[1]  Although the court must construe the facts in the light most favorable to the nonmoving party, see Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), the facts necessary for determination as a matter of law are not in dispute.  The court has taken judicial notice, pursuant to Rule 201(b) of the Federal Rules of Evidence, of matters in the public record, including the court record and filings in other litigation between the parties. Fed. R. Evid. 201(b); see French v. Chosin Few, Inc., 173 F. Supp. 2d 451, 457 (W.D.N.C. 2001) (recognizing that the demands of justice may require the court to make use of established and uncontroverted facts from other cases between the parties) (quoting Morse v. Lewis, 54 F.2d 1027, 1029 (4th Cir. 1932)).

time of the disability."  (Pl.'s Reply Mem. Law Supp. Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. Ex. A.)

In January 2002, Plaintiff applied for disability benefits under the Plan, asserting he had become totally disabled in 1997. On January 22, 2002, after reviewing Plaintiff's supporting evidence, Defendant denied Plaintiff's claim for disability benefits because, among other reasons, Plaintiff's medical records did not support a determination that Plaintiff was unable to work at any occupation or was permanently disabled.  Plaintiff then filed a lawsuit challenging Defendant's decision pursuant to 29 U.S.C. § 1132(a)(1)(B) ("Ward I").  On June 14, 2004, this court entered summary judgment in favor of Defendant in Ward I, holding that Defendant did not abuse his discretion in denying Plaintiff's application for benefits.  See Ward v. Maloney, No. 1:02-CV-00467, 2004 WL 1345089, at *3 (M.D.N.C. June 14, 2004).

On November 26, 2004, Plaintiff mailed a letter to Defendant requesting, "Pursuant to the ERISA Act, Section 104, . . . a copy of the SUMMARY OF MATERIAL MODIFICATIONS notifying Plan Participants of an amendment to the plan that <u>limit disability retirement benefits to employees actively working for the company at the time of disability</u>."  (Mem. Law Supp. Pl.'s Mot. Summ. J. Ex. A.)  Defendant's counsel responded to Plaintiff on December 23, 2004, enclosing copies of the most recent summary plan description and the summary plan description in effect at the

3

time Plaintiff's employment ended in November 1993, and explaining:

> At all pertinent times, the Retirement Plan has limited disability retirement benefits to participants in the Retirement Plan who become disabled before terminating their employment with LIN Television Corporation. Because of your lawsuit claiming benefits for an alleged disability that occurred after your termination of employment, the Retirement Plan was clarified effective January 1, 2002 to specify that disability benefits would be limited to participants who retire from "active" employment due to disability. The addition of the term "active" was a clarification of the Retirement Plan's disability provisions and was intended to recast the language of the Plan into an even clearer "plain English" description. This change was not a material modification to the Retirement Plan. Thus, no summary of material modifications relating to this change has been distributed.

(Id. Ex. B.)

Plaintiff was unsatisfied with the explanation and sought the assistance of the United States Department of Labor ("DOL"). In early January 2005, a DOL representative called counsel for Defendant and requested "a copy of the amendment to the plan effective January 1, 2002, which according to [] his December 23, 2004 letter to [Plaintiff] clarified the plan rule that disability benefits are limited to participants who retire from 'active' employment due to disability." (Id. Ex. E.) In response to the DOL request, defense counsel sent Plaintiff a copy of the January 1, 2002 Restatement of LIN Television Corporation's Retirement Plan. (Id. Ex. F.) The restatement sent to Plaintiff was unexecuted, lacking a signature of the Plan

4

administrator and an execution date.  After Plaintiff received the unexecuted document, he recontacted the DOL, who on or about February 10, 2005, requested an executed copy of the January 1, 2002 Restatement from Defendant.  (Id. Ex. H.)  When Plaintiff did not receive the executed copy by March 8, 2005, the DOL made a second request.  (Id. Ex. I.)  No executed copy was ever sent by Defendant.

Plaintiff then brought suit in the United States District Court for the District of Rhode Island.  Therein, he alleged he had never received documents responsive to his request and Defendant was engaged in a continuing violation of his obligations under ERISA.  Upon Defendant's motion to change venue, the case was transferred to this court.  Now pending before this court are the parties' cross motions for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented.  McLean v. Patten Cmties., Inc., 332 F.3d 714, 719 (4th Cir. 2003) (citing Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2509-10).  A court "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence."  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (citing Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002)).  Although the court must view the facts in the light most favorable to the nonmovant, see Anderson, 477 U.S. at 255, 106 S. Ct. at 2513, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." Solis v. Prince George's County, 153 F. Supp. 2d 793, 807 (D. Md. 2001); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775 (1989) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice.").

**III. ANALYSIS**

One of ERISA's central goals is to "enable plan beneficiaries to learn their rights and obligations at any time." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83, 115 S.

6

Ct. 1223, 1230 (1995). This is reflected in ERISA's elaborate scheme of reporting and disclosure requirements. See generally 29 U.S.C. §§ 1021-1031. One of ERISA's disclosure provisions relevant here provides that a plan "administrator shall, upon written request of any participant . . ., furnish a copy" of certain plan documents. 29 U.S.C. § 1024(b)(4) ("§ 1024(b)(4)"). The plan documents subject to request include the latest updated summary plan description, latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, and "other instruments under which the plan is established or operated." Id. Failure to provide a participant with a copy of a plan document listed in § 1024(b)(4) within 30 days of a written request may, in the court's discretion, subject an administrator to personal liability in the amount of up to $[110] per day from the date of such failure.[2] 29 U.S.C. § 1132(c)(1) ("§ 1132(c)(1)").

There is no dispute that Plaintiff made a clear request for a copy of a summary of material modifications, nor is there dispute Defendant had an obligation to respond to Plaintiff's request. Although a summary of material modifications is not one of the requisite documents furnished to participants under § 1024(b)(4), it is clear that such summaries are documents "under which the plan is established or operated." 29 U.S.C. §

---

[2] Federal regulations increase the maximum daily statutory penalty from $100 to $110 for violations occurring after July 29, 1997. See 29 C.F.R. § 2575.502c-1.

7

1024(b)(4). Summaries of material modifications exist to report changes in the terms of an ERISA plan and work in conjunction with annual reports and summary plan descriptions to keep participants notified of their rights and benefits. See 29 U.S.C. § 1022(a). These summaries are also subject to ERISA's automatic reporting scheme, which requires administrators to send them to participants automatically upon various triggering events. Id. § 1024(b)(1). There is no reason why the summaries would not also be subject to disclosure upon request. Thus, pursuant to Plaintiff's written request as a Plan participant, Defendant was obligated to furnish Plaintiff with a copy of any summary of material modifications that limited disability retirement benefits to employees actively working for the company at the time of disability.

Defendant does not dispute that he did not provide the summary of material modifications to Plaintiff. Instead, he contends that such a document does not exist because the Plan has always provided that disability benefits are limited to those employees who were actively working for LIN Broadcasting at the time of disability. Defendant's position is essentially there can be no summary of material modifications if there has been no material modification. Plaintiff argues there must have been a material modification to the Plan because the Langelier Letter stated the Plan committee was considering an "amendment" to limit disability to those working at the time of disability. (Pl.'s Reply Mem. Law Supp. Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J.

Ex. A.) According to Plaintiff, if the Langelier Letter stated that such a change constituted an amendment to the Plan, the Plan in existence at the time of the letter must not have contained that limiting provision. Therefore, if the current version of the Plan does limit disability to those actively working when disabled, a material modification to the Plan must have occurred.

Plaintiff's argument is flawed because it presupposes the accuracy and authoritativeness of Ms. Langelier's statement. The Langelier Letter, however, does not control the language of the Plan nor does it constitute a contract between Plaintiff and LIN Broadcasting. The Plan in effect at the time, dated January 1, 1989, is clear.[3] It provided for benefits "in the case of a Participant who terminates his Service on a Disability Retirement Date." (Maloney Aff. Ex. A ¶ 6.1(b).)[4] The "Disability Retirement Date" is defined by the Plan as "[a]ny day prior to a Participant's Normal Retirement Date or Early Retirement Date, but subsequent to his completion of ten Years of Vesting Service

---

[3] The January 1, 1989 Restatement of the Plan was still in effect when Plaintiff's employment with Defendant was terminated in November 1993. (Maloney Aff. ¶ 3.)

[4] By court order of June 2, 2005, Defendant's cross motion for summary judgment was due June 17, 2005. On that day, Defendant filed a motion for summary judgment, supporting memorandum of law, and an unsigned affidavit authenticating attached exhibits. Defendant also moved for an extension of time to file a signed copy of his affidavit. The affidavit was subsequently signed and filed on June 28. Defendant's motion for an extension of time was unopposed. The court will grant Defendant's motion and accept his affidavit and the attached exhibits.

9

and his attainment of age 45, <u>on which he retires or is retired because of Disability</u>." (<u>Id.</u> at 4 (emphasis added).) Thus, the version of the Plan in effect at the time of the Langelier Letter and Plaintiff's termination required an employee to retire because of disability to be eligible for disability benefits.[5]

The wording in the subsequent Plan restatements varies from the January 1, 1989 Restatement but does not create material modifications. ERISA does not define the term "material modification," leaving it to judicial interpretation. Courts have recognized that Congress, in enacting ERISA's notice provisions, was primarily concerned with whether the plan participants had adequate notice of qualification or disqualification provisions concerning benefits. <u>Baker v. Lukens Steel Co.</u>, 793 F.2d 509, 512 (3d Cir. 1986). Thus, material modifications include, among other things, amendment provisions which establish new benefits, <u>see</u> <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 237 (3d Cir. 1994); delete existing benefits, <u>see</u> <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>,

---

[5] The court came to the same conclusion about the Langelier Letter and the Plan language, albeit in dicta, in Ward I. There, the court questioned whether Plaintiff was even eligible for benefits because it found that the Plan required a person to retire "because of Disability" to be eligible for disability benefits and Plaintiff alleged his disability began some four years after leaving Defendant's employ. <u>See</u> <u>Ward v. Maloney</u>, No. 1:02-CV-00467, 2004 WL 1345089, at *2 (M.D.N.C. June 14, 2004). However, because Plaintiff's apparent ineligibility for benefits was not a stated reason for Plaintiff's denial of benefits, the court could not grant summary judgment on that ground. <u>Id.</u> at *3.

10

772 F.2d 1032, 1040 (2d Cir. 1985); narrow or expand the circumstances under which benefits are paid, see Henne v. Allis-Chalmers Corp., 660 F. Supp. 1464, 1474 (E.D. Wis. 1987); and terminate the plan entirely, Lettrich v. J.C. Penney Co., 213 F.3d 765, 769 (3d Cir. 2000). However, not all amendments are material modifications, for Congress could not have envisioned a scheme by which plan administrators were required to notify participants every time a word or phrase was altered in an ERISA plan. Where an amendment merely clarifies the language in the Plan and does not affect substantive changes, the amendment is not a material modification. See, e.g., Hasty v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 851 F. Supp. 1250, 1256 (N.D. Ind. 1994) (holding in a case where amendments more specifically set forth a trustee's discretionary authority that "the changes to the Trust Agreement and the Plan Document do not represent material modifications that would warrant providing . . . notice of the changes. . . . [because] [t]he 1989 amendments simply clarify a power"); Weinfurther v. Source Servs. Corp. Employees Profit Sharing Plan and Trust, 759 F. Supp. 599, 602 (N.D. Cal. 1991) (holding as to amendments changing the definition of the term "competition," that there was no "material difference between the 1985 and 1986 definitions of 'competition'" because the new definition did not create substantive changes).

In this case, the court finds the Plan provisions regarding qualification for disability benefits in the subsequent

11

restatements are not material modifications of the January 1, 1989 Restatement. The January 1, 2001 Restatement uses language slightly different from the earlier restatement, but still maintains that disability benefits are only payable when an employee retires "due to a Disability." (Maloney Aff. Ex. B ¶ 8.1 (providing eligibility for "[e]ach Participant who terminates employment . . . after reaching age 45 and completing at least 10 years of Service, but prior to his Normal Retirement Date due to a Disability").) Likewise, the January 1, 2002 Restatement, the latest Plan statement, retains the "due to a Disability" language but clarifies that disability retirement must be from "active" employment. (Id. Ex. C ¶ 8.1 (providing eligibility for "[e]ach Participant who retires from active employment . . . after reaching age 45 and completing at least 10 years of Service, but prior to his Normal Retirement Date due to a Disability.").) These minor changes in the Plan language, neither of which has any effect on a participant's eligibility for disability benefits or the value of those benefits, are not material modifications to the Plan. Instead, they are mere clarifications.

Defendant is under no obligation to create a summary of material modifications when no material modification occurred. It follows that this court cannot impose § 1132(c)(1) liability for failure to produce this nonexistent document. Although a court may impose a penalty on a plan administrator for failure to provide a nonexistent document to a participant where the document must be kept pursuant to ERISA, a penalty is

12

inappropriate where, as here, the nonexistent document requested has no current application.  See, e.g., Jackson v. E.J. Brach Corp., 937 F. Supp. 735, 739-40 (N.D. Ill. 1996) (finding § 1132(c)(1) liability where a participant requested a nonexistent summary plan description and the administrator failed to provide it, but rejecting liability for outdated documents); Birdsell v. United Parcel Serv. of Am., 903 F. Supp. 1338, 1347 (E.D. Mo. 1995) (rejecting § 1132(c)(1) liability where no evidence was presented that the plan was required to provide inapplicable or nonexistent documents).  Therefore, because a material modification to the Plan has not occurred and Defendant was under no obligation to create a summary where no material modification existed, Defendant cannot be found liable under § 1132(c)(1) for failure to provide the summary of material modifications.  Summary judgment will be entered in favor of Defendant.

**IV.  CONCLUSION**

For the reasons stated herein, the court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.  Furthermore, the court will grant Defendant's motion for extension of time to file supporting documents.  A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 23rd day of August 2005.


_____
United States District Judge

14